UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ANTONIO VELASQUEZ, JR.,

              Plaintiff,

     -against-

METRO FUEL OIL CORP., APOLLO
PETROLEUM TRANSPORT LLC, and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF
AMERICA (AFL-CIO) LOCAL 553,

              Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-1548 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are Plaintiff Antonio Velasquez's objections to Magistrate Judge Lois

Bloom's Report and Recommendation ("R&R") that recommended granting summary judgment

for Defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers

of America (AFL-CIO) Local 553 ("Local 553" or "the union") on Plaintiff's federal claims,

dismissing Plaintiff's state law claims without prejudice, and denying Plaintiff's cross-motion for

summary judgment. For the reasons set forth below, the R&R is ADOPTED IN FULL.

## I.    BACKGROUND

### A.    Factual Background

Unless otherwise noted, the following facts come from Local 553's Rule 56.1 Statement

of Undisputed Material Facts ("Def.'s 56.1 Stmt." (Dkt. 53)) and were acknowledged by Plaintiff

in his Response to Defendant's Proposed Finding of Facts ("Pl.'s 56.1 Resp." (Dkt. 57)).

Defendants Metro Fuel Oil Corporation and Apollo Petroleum Transport LLC (collectively "the

employer") hired Plaintiff as a fuel oil truck driver on December 15, 2008.[1] (Def.'s 56.1 Stmt. ¶ 9.) On December 29, 2008, Plaintiff spilled approximately five gallons of oil during a delivery to a customer. (Id. ¶ 48.) Plaintiff completed a spill report, explaining that although he followed written company procedure for unloading the oil, the particular truck assigned to him required a different unloading method. (Id. ¶ 52.) Plaintiff had not been fully trained in how to unload this particular truck. (Compl. (Dkt. 1) at 150.)[2] In discussing the incident with the union steward, Ken Orrichio ("Orrichio"), and the safety supervisor, Roger Romance ("Romance"), Plaintiff pointed out the discrepancy between the written instructions and the actual unloading procedure required for the delivery truck assigned to him. (Def.'s 56.1 Stmt. ¶¶ 54-55.) Romance said to him, "you are the only one who ever pointed out anything in our written policy, and that can hurt the company you know." (Id. ¶ 55; Pl.'s 56.1 Resp. ¶ 54.) The employer subsequently placed labels on the trucks requiring different unloading procedures and edited the company manual. (Def.'s 56.1 Stmt. ¶ 54; Compl. at 27.) Plaintiff believed that the employer was going to receive a $43 million grant from the government and speculates that by pointing out the error in the company manual, he may have jeopardized those funds. (Wolf Decl. in Supp. of Def.'s Mot. for Summ. J. at Ex. B (Velasquez Dep.) (Dkt. 51-2) 171:24-173:2.) Plaintiff alleges that after the spill incident, he suffered pay shortages, sabotage of his delivery truck, and other mistreatment in retaliation.

---

[1] On September 27, 2012, the employer filed for Chapter 11 bankruptcy under Title 11 of the U.S. Code. (Not. of Bankr. (Dkt. 38).) Therefore this action is stayed against those defendants. (See Nov. 21, 2012, Order (Dkt. 40).)

[2] Plaintiff's Complaint appends numerous supporting documents, which Plaintiff refers to as his "Prima Facie Court Case File." For ease of reference, these documents are cited collectively as Complaint and referred to by ECF page numbers.

1. Pay Shortages

During his employment, Plaintiff reported to Orrichio that the employer was shorting his pay for overtime hours and holidays worked. (Def.'s 56.1 Stmt. ¶ 101.) Each time Plaintiff complained, Orrichio spoke to the employer on Plaintiff's behalf, and the pay shortage was remedied. (Id. ¶¶ 102-104.) Plaintiff maintains, however, that Orrichio grew resentful of having to address Plaintiff's repeated complaints. (Pl.'s 56.1 Resp. ¶ 103.)

In 2009, union members ratified a new collective bargaining agreement ("CBA"), under which Plaintiff believes he was entitled to a higher wage. (Def.'s 56.1 Stmt. ¶ 107.) Plaintiff points to a notice dated March 25, 2009, announcing the vote on the CBA that was distributed by the union and states that the agreement entitles members to certain wage increases. (Pl.'s 56.1 Resp. ¶ 107 (citing Compl. at 102-03).) Plaintiff did not obtain a copy of the CBA until late 2009. (Id.) Defendants contend that because Plaintiff was hired after March 1, 2007, he is subject to an exception to the regular hourly wages under the CBA. (Def.'s 56.1 Stmt. ¶ 108.) Article XXV(B) of the CBA states:

> Drivers hired on or after March 1, 2007 shall be paid Two ($2.00) dollars per hour less than the above rates during the first year of employment; Additionally, Drivers hired on or after March 1, 2007 shall receive Fifty (.50) cents per hour less during their second year of employment at the end of which time they will receive the regular rate of pay then in effect.

(Compl. at 142.) The "above rates" referenced in the CBA are the same as the wages increases detailed in the March 25, 2009, notice. (Compare id. at 142, with id. at 102.) Plaintiff does not dispute the language of the agreement. (Pl.'s 56.1 Resp. ¶ 108.)

2. May 2009 Termination

In May 2009, the employer terminated Plaintiff because he did not have a Transportation Worker Identification Credential ("TWIC") card, a credential issued by the Transportation

3

Security Administration ("TSA") that was required for fuel tanker drivers to deliver to certain oil terminals. (Def.'s 56.1 Stmt. ¶¶ 85, 87.) At the time, Plaintiff's application for a TWIC card was pending with the TSA. (Id. ¶ 86.) Although the union claims the employer only became aware of Plaintiff's lack of a TWIC card in May 2009 (id. ¶ 84), Plaintiff contends that he advised the employer about the pending status of his TWIC card during pre-employment orientation (Pl.'s 56.1 Resp. ¶ 84). The employer offered to reinstate Plaintiff once he obtained a TWIC card. (Def.'s 56.1 Stmt. ¶ 88.) Plaintiff contacted the union, and a representative told him that "there was nothing the union could do for [him]" and "to give the [TSA] hell" regarding his pending application. (Id. ¶ 90.)

After his termination, Plaintiff applied for unemployment benefits, but the benefits were suspended because the employer contested Plaintiff's application by falsely asserting that Plaintiff had voluntarily quit. (Id. ¶ 94; Pl.'s 56.1 Resp. ¶ 95.) Plaintiff's benefits were reinstated after the employer failed to appear for a hearing and Plaintiff was granted default judgment by the New York Department of Labor. (Def.'s 56.1 Stmt. ¶ 95; Pl.'s 56.1 Resp. ¶ 95.) Plaintiff claims he contacted Orrichio about the employer's misrepresentations to the Department of Labor and other issues stemming from his termination. (Pl.'s 56.1 Resp. ¶ 96.) The union, however, contends that Plaintiff did not inform it of the any problems with his unemployment benefits until January 2010. (Def.'s 56.1 Stmt. ¶ 96.)

Plaintiff obtained a TWIC card in September 2009 and returned to work for the employer.[3] (Id. ¶¶ 97-98.) Plaintiff retained his original date of hire and was paid the same wage as before his termination, but he was placed at the bottom of the seniority list. (Id. ¶ at 99; Compl. at 152.)

---

[3]     Plaintiff disputes that he was "reinstated" by the employer, maintaining that he was instead "forced to file a new employment application by the defendant employer and was told that he (Plaintiff) would have to pass a second 90 day[] probation period . . . ." (Pl.'s 56.1 Resp. ¶ 98.)

### 3. Truck Tampering and Harassment

Plaintiff also made complaints to the union that his truck had been tampered with in ways that compromised his safety. Plaintiff cites incidents in which oil leaked from the back of his vehicle; the gear shift broke while Plaintiff was driving and appeared to have been hacksawed; and he discovered his truck's hose to be unexpectedly over pressurized to a dangerous degree. (Def.'s 56.1 Stmt. ¶¶ 111-16; Compl. at 40-47.) In addition, on at least four occasions, Plaintiff was dispatched to delivery locations on streets that did not have adequate space to safely park his truck. (Compl. at 47-49.) He relayed these incidents to Orrichio, Scott Anslwyck (a manager) ("Anslwyck"), and the company dispatcher. (Id. at 48.)

Plaintiff also complained to the union that he was subjected to harassment and verbal and physical intimidation by the employer. (Def.'s 56.1 Stmt. ¶ 117.) For example, Anslwyck accused Plaintiff of being unproductive and getting paid to do nothing. (Id.; Compl. at 29.) When Plaintiff complained about his safety concerns, Anslwyck would respond dismissively, telling Plaintiff to "shut up" or that "there are a lot of people out of work." (Compl. at 29, 37.) Plaintiff complained repeatedly to Orrichio about the mistreatment. (Def.'s 56.1 Stmt. ¶ 118.) On at least one occasion, Orrichio angrily responded "No one here is out to get you!" (Id. ¶ 119.) In addition, a rubber rat was placed in the employee locker room shortly after the spill incident. (Def.'s 56.1 Stmt. ¶ 131; Pl.'s 56.1 Resp. ¶ 131.) Plaintiff speculated that the rat was directed at him, but "did not think much about the plastic rat." (Def.'s 56.1 Stmt. ¶¶ 132-33; Pl.'s 56.1 Resp. ¶¶ 132-33.) Plaintiff also complained that his workload was very heavy. (Id. ¶ 100.)

4. <u>Discrimination</u>

Plaintiff claims that he faced discrimination on the job. For example, in December 2009, Plaintiff reported to Anslwyck that his identification card was missing, and Anslwyck responded "Did you look for it in the crack of your ass, you stupid spic!" (Id. ¶¶ 125-26; Pl.'s 56.1 Resp. ¶ 125.) Plaintiff reported the statement to another employee but did not tell a representative of the union. (Def.'s 56.1 Stmt. ¶¶ 127-28.) The union claims that this was the only incident "where Plaintiff believed that he was discriminated against on the basis of his identity as a 'Hispanic American' and his 'international heritage.'" (Id. ¶ 129.) Plaintiff maintains that while this comment was the only "verbally articulated [discriminatory] statement made against him," there were other "physical demeanors," "facial expressions," and "adverse employment acts," such as the incidents discussed above, that he claims are evidence of discrimination. (Pl.'s 56.1 Resp. ¶ 129.) Plaintiff could not provide any other specific examples of discrimination during his deposition. (Def.'s 56.1 Stmt. ¶¶ 122-124.)

Plaintiff has put forward different reasons for his alleged mistreatment by the employer and the union. During his deposition, he testified that he claimed discrimination on the basis of race, color, national origin, sex, and age because he did not know the actual reason for Defendants' actions. (Id. ¶ 134.) He stated that he "later learned that it had to do with the spill complaint the [he] filled out" and testified that he sought to amend his Complaint to allege only retaliation instead of the other bases for discrimination. (Id. ¶ 134; Velasquez Dep. 148:9-150:25.) In his Rule 56.1 Response, however, Plaintiff points out that Orrichio, who is Italian American, was responsible for a thousand-gallon spill but was later promoted to shop steward by the union (Pl.'s 56.1 Resp. ¶ 134), an indication that Plaintiff still intends to pursue a Title VII claim for discrimination of the basis of national origin.

6

5. January 2010 Termination

On January 12, 2010, Plaintiff delivered approximately 350 gallons of fuel to the wrong address.[4] (Def.'s 56.1 Stmt. ¶ 57.) The delivered fuel was the wrong grade for the customer's building. (Id. ¶ 58; Compl. at 51.) Plaintiff did not follow the employer's safety procedures when making the delivery or reporting the incident. (Def.'s 56.1 Stmt. ¶ 60.) Plaintiff left the location of the wrong delivery, delivered the remainder of the fuel to the correct customer, and began to drive to the next customer before reporting the incident. (Id. ¶ 61.) While Plaintiff admits this, he contends that Defendants' mistreatment of him "had a direct adverse effect on [his] ability to reason with logic and rationalize correctly, and as a direct result, [he reported the incident] . . . at the time [he] deemed safe and appropriate." (Pl.'s 56.1 Resp. ¶ 60.) The union claims that to remedy the error, the entire contents of the first customer's fuel tank had to be pumped out and replaced with the proper fuel grade at the employer's expense of $8,000. (Def.'s 56.1 Stmt. ¶ 59.)

The following day, Romance fired Plaintiff. (Def.'s 56.1 Stmt. ¶ 65.) Plaintiff asked Orrichio, the union steward, to grieve the termination. (Id. ¶ 67.) On January 26, 2010, Plaintiff, Orrichio, Romance, the union president Jack Dresch ("Dresch"), and a senior manager Anthony Peretta ("Peretta") attended the grievance meeting. (Id. ¶¶ 71-72.) Immediately before the grievance meeting, Plaintiff briefed Dresch about his case. (Id. ¶ 68; Pl.'s 56.1 Resp. ¶ 74.) There is some dispute about how the meeting began. Plaintiff claims that after everyone sat in silence for a while, he asked if Dresch was going to say anything on his behalf, and Dresch replied "No, you speak." (Pl.'s 56.1 Resp. ¶ 74.) The union's facts strike a different tenor, contending that "Mr. Dresch gave Plaintiff the opportunity to speak first." (Def.'s 56.1 Stmt. ¶

---

[4]     The union's Rule 56.1 Statement states "350 hundred gallons," and Plaintiff acknowledges this fact. (Def.'s 56.1 Stmt. ¶ 57; Pl.'s 56.1 Resp. ¶ 57.) However, the portions of the Complaint cited by the union make clear that the actual amount was approximately 350 gallons. (Compl. at 16, 49, 78, 83, 123.)

74.) Plaintiff then relayed his complaints about pay shortages, the truck sabotage, the employer's misrepresentation related to his unemployment benefits, his termination for the TWIC card, and other mistreatment. (Id. ¶ 75.) Peretta stated that the purpose of the meeting was to discuss Plaintiff's termination due to the wrongful delivery. (Id. ¶ 75.) Plaintiff claims he offered to pay the company $ 8,000 in damages, but Orrichio said that such an arrangement would be illegal. (Velasquez Dep. 232:17-22.) Plaintiff asked if he would be rehired, and Peretta responded no. (Def.'s 56.1 Stmt. ¶¶ 78-79.) Plaintiff then walked out of the meeting. (Id. ¶ 75; Velasquez Dep. 232:23-233:5.) Plaintiff claims he left the meeting because it became clear that Defendants were only there to humiliate him and he was also suffering pain and discomfort. (Pl.'s 56.1 Resp. ¶ 80; Velasquez Dep. 233:18-25.)

### B. Procedural History

On January 28, 2010, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against the employer and the union, alleging discrimination and retaliation. (Compl. at 12-16.) The complaint alleged discrimination by Romance, Anslwyck, and Dresch on the basis of age, arrest record, race/color or ethnicity, sex, and retaliation. (Id. at 12-13.) As for the specific acts of discrimination, Plaintiff alleged that he was fired, demoted, harassed or intimidated, denied benefits, paid a lower salary than others with the same title, given a disciplinary notice, and suffered "verbal abuse by supervisor[,] denial of privileges and due process of law." (Id. at 14.) Specifically regarding the union, Plaintiff alleged that after his January 2010 termination, the union "failed to render due process" at the grievance meeting. (Id. at 15.) On December 28, 2011, the NYSDHR dismissed Plaintiff's complaint and annulled the election of remedies pursuant to Plaintiff's request. (Id. at 20-21.) A December 8, 2011, NYSDHR letter acknowledging Plaintiff's request for dismissal stated "[w]here a complaint is

dismissed on the grounds that the election of remedies annulled, any subsequent Human Rights Law action must be brought in state court within three years from the original date that the discrimination occurred." (Id. at 18.)

On or about July 7, 2010, Plaintiff also filed a charge with the National Labor Relations Board ("NLRB"), alleging violations of the National Labor Relations Act ("NLRA") by the employer and the union. (Id. at 23-60.) On August 26, 2010, the NLRB dismissed the charge, stating in part that "[w]ith respect to your charge against the Union, again, it is able to show that its decision not to pursue your discharge grievance, or your claim regarding contractual wages, was not outside the bounds of the discretion the law allows." (Id. at 159.) Plaintiff's appeal of this decision was also denied. (Id. at 162.)

Plaintiff also filed a charge with the EEOC alleging Defendants' discriminatory conduct. (Id. at 4.) On February 6, 2012, the EEOC issued him a Right to Sue letter, noting that Plaintiff "wishes to pursue the matter in Court." (Id. at 22.) On March 29, 2012, Plaintiff filed this action against the employer and the union, alleging that they violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 §§ 621, et seq. ("ADEA"), and other state law causes of action. (Compl. at 1, 3.) The union and Plaintiff both moved for summary judgment, and this court referred the motions to Magistrate Judge Lois Bloom for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Oct. 9, 2013, Order (Dkt. 63).)

On February 18, 2014, Judge Bloom issued the R&R, recommending that the court (1) grant summary judgment for the union on Plaintiff's federal claims, (2) dismiss Plaintiff's state law claims without prejudice, and (3) deny Plaintiff's cross-motion for summary judgment.

(R&R at 23-24.) The court granted Plaintiff's request for an extension of time to file objections to the R&R. (Mar. 3, 2014, Order (Dkt. 66).) Plaintiff then timely filed his objections and supplemental supporting documents. (Pl.'s Obj. (Dkt. 67); Pl.'s Mar. 25, 2014, Ltr. (Dkt. 70).) Plaintiff also filed a motion for a settlement conference, a motion to disqualify the union's counsel, and a motion to appoint pro bono counsel. (Dkts. 68-69.)

## II.    STANDARD OF REVIEW

When a magistrate judge issues an R&R on a dispositive motion, and the R&R has been served on the parties, a party has fourteen days to object. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). However, to obtain this de novo review of a magistrate judge's R&R, an objecting party "must point out the specific portions of the report and recommendation to which [he] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012).

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that a plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)"). Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

## III.   PLAINTIFF'S OBJECTIONS

Plaintiff's objections comprise nine pages, of which the first six cite statutes, federal rules, and case law related to the scope of magistrate judge authority. (Pl.'s Obj. at 1-6.) Following that is a section entitled "Plaintiff's Prima Facie Factual Allegations," which largely repeats the claims in Plaintiff's Complaint and cites to documents filed with the Complaint. (Id. at 6-7.) The final two pages contain further objections divided into two sections: "Partial Errors of Facts in Magistrate's Report" and "The Errors of Fact in the Magistrate Judge's R&R." (Id. at 8-9.)

Because Plaintiff is proceeding pro se, the court reads his objections "liberally and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed."). However, the court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Molina v. State of N.Y., 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

Under this charitable reading, the court finds that Plaintiff has put forward a number of objections to specific portions of the R&R, which shall be reviewed de novo. The remaining objections are conclusory or general and therefore require, along with the unobjected to portions of the R&R, clear error review. See U.S. Flour, 2012 WL 728227, at *2.

### A.   Specific Objections

#### 1.   Referral of the Motions to Judge Bloom

The court construes the first two sections of Plaintiff's submission as an objection to this court's referral of the summary judgment motions to Judge Bloom for a report and recommendation. Plaintiff outlines 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73,

quoting heavily from these authorities and case law regarding the scope of magistrate judge authority. (See Pl.'s Obj. at 1-6.) For example Plaintiff states that 28 U.S.C. § 636(b) "does NOT authorize a magistrate to enter final judgment." (Pl.'s Obj. at 2 (citing Kendall v. Davis, 569 F.2d 1330, 1330 (5th Cir. 1978).) Plaintiff also appears to argue that consent of the parties is required for a magistrate judge to consider a motion. (See Pl.'s Obj. at 4-5 ("Rule 73(b) of the Federal Rule[s] of Civil Procedure[] REQUIRE[S] that the parties execute and file a written consent form, also to protect the voluntariness of the parties' consent.") (citing Fed. R. of Civ. P. 73(b) advisory committee note); id. at 5 ("[U]nder 636(c)(1), lack of consent and defects in the referral order are nonwaivable jurisdictional errors.") (quoting Roell v. Withrow, 538 U.S. 580, 580 (2003) (syllabus)).

Although Plaintiff is generally correct in his statement of the law, he has focused on the wrong federal rule and subsection of § 636. Section 636(b)(1)(B) permits a magistrate judge to consider summary judgment motions and make "proposed findings of fact and recommendations" to the district court judge regarding their disposition.[5] Rule 72(b)(1) supports

---

[5]     That subsection provides, in full:

> [A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to *submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A),* of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(B) (emphasis added). "[A]ny motion excepted in subparagraph (A)" refers to motions excluded from § 636(b)(1)(A), the subsection that permits magistrate judges to *determine* certain matters rather than only *recommend* disposition to the district court:

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, *except a motion* for injunctive relief, for judgment on the pleadings, *for summary judgment,* to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

Id. § 636(b)(1)(A) (emphasis added).

§ 636(b), stating that "[a] magistrate judge must promptly conduct the required proceedings when assigned, *without the parties' consent*, to hear a pretrial matter dispositive of a claim . . . . The magistrate judge must enter a recommended disposition . . . ." Fed. R. Civ. P. 72(b)(1). As Plaintiff notes, these authorities do not empower a magistrate to enter final judgment or issue an order on a dispositive motion; rather they permit a magistrate to issue a *recommendation* to the district court judge regarding disposition. See 28 U.S.C. § 636(b)(1)(B). Referrals under this statute and the corresponding rule do not require party consent because the magistrate judge's report and recommendation is purely advisory. It does not have the force of an opinion or order of the court until adopted—or rejected or modified—by the district court, before which the parties have an opportunity to submit objections. See id. § 636(b)(1)(C). By contrast, consent of the parties is required for proceedings under § 636(c) and Rule 73, which authorize a magistrate judge to preside over entire civil actions, including conducting trial and ordering the entry of judgment in a case. See id. § 636(c)(1); Fed. R. Civ. P. 73(a)-(b).

Here the court referred two dispositive motions to Judge Bloom "for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l)(B) and Federal Rule of Civil Procedure 72(b)(l)." (Oct. 9, 2013, Order.) Judge Bloom issued the R&R, which provided certain recommendations to the court about the disposition of the motions. In his objections, Plaintiff cites they very subsection that governed this court's referral to Judge Bloom:

> As applicable here where the parties to this action, did NOT, through legal procedure, formally specifically consent to proceeding before the magistrate judge, see section 636(c)(1), the district court may designate a magistrate judge to consider various matters, *see section 636(b)*. . . . While magistrates may hear dispositive motions, they may only make proposed findings of fact and recommendations, and district courts must make de novo determinations, (specifically here . . . based on proper evaluation of the prima facie testimony and direct document evidence in the

13

court record,) when a party objects to the magistrate's report and recommendation.[6]

(See Pl.'s Obj. at 4 (second ellipsis in original; emphasis added) (citing First Union Mortg. Corp., v. Smith, 229 F.3d 992, 995 (10th Cir. 2000).) The court has followed this procedure in referral of the motions and consideration herein of Plaintiff's objections. Therefore Plaintiff's objection is overruled.

### 2. Statute of Limitations on Duty of Fair Representation Claim

Plaintiff also objects to the R&R's conclusion that Plaintiff's duty of fair representation claim is time-barred. Plaintiff points to the December 8, 2011, NYSDHR letter, confirming receipt of Plaintiff's request to dismiss his NYSDHR complaint and claims this letter advises of a longer statute of limitations. (Pl.'s Obj. at 9.) The letter states "[w]here a complaint is dismissed on the grounds that the election of remedies is annulled, any subsequent *Human Rights Law action* must be brought in *state court* within three years from the original date that the discrimination occurred." (Pl.'s Mar. 25, 2014, Ltr. (enclosing NYSDHR letter) (emphasis added).) The NYSDHR letter refers to a Human Rights Law action—a state law claim—brought in state court. Plaintiff's duty of fair representation claim is under federal law, and this action is in federal court. The six-month limitations period for a duty of fair representation claim is well-established under case law. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983) (holding that the six-month limitations period in section 10(b) of the NLRA applies to claims of breach of a union's duty of fair representation); Beachum v. AWISCO N.Y., 785 F. Supp. 2d 84, 100 (S.D.N.Y. 2011) aff'd sub nom. Beachum v. AWISCO N.Y. Corp., 459 F. App'x 58 (2d Cir. 2012) ("The statute of limitations on a duty of fair representation claim is six

---

[6] The court notes that a party must make objections to a *specific* portion of the magistrate's report and recommendation in order to obtain de novo review of that section. See U.S. Flour, 2012 WL 728227, at *2. Otherwise, Plaintiff's summary is correct.

months. . . . [and] accrues when the union members know or reasonably should know that a breach of that duty has occurred."). A notice from a state agency that refers to state law claims cannot dictate or displace the established statute of limitations for Plaintiff's federal claim.

Since Plaintiff's duty of fair representation claim is time barred, he cannot maintain his Title VII and ADEA claims. "[I]n order to establish a violation of Title VII or the ADEA by [a labor organization, a plaintiff] would have to show, at a minimum, that the union breached its duty of fair representation and that its actions were motivated by discriminatory animus." McIntyre v. Longwood Cent. Sch. Dist., 380 F. App'x 44, 49 (2d Cir. 2010) (summary order); see also Klaper v. Cypress Hills Cemetery, No. 10-CV-1811 (NGG), 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012); Beachum, 785 F. Supp. 2d at 103 ("Plaintiff cannot maintain a cause of action against a union under Title VII without a finding that the union breached its duty of fair representation.") Because Plaintiff cannot establish his duty of fair representation claim, as a matter of law, his Title VII and ADEA claims fail as well. Therefore Plaintiff's objection is overruled.[7]

### 3. Plaintiff's Training by the Employer

Plaintiff also objects to the R&R for failing to mention "the prima facie fact that the plaintiff was denied adequate proper training by the defendant employer." (Pl.'s Obj. at 8.) To support the fact that the employer promised to train Plaintiff and did not adequately do so, Plaintiff cites a letter from the employer's counsel to NYSDHR stating that Plaintiff was to be trained "for a one week period" when he was hired (Compl. at 143) and also cites an email from

---

[7]     Due to the court's dismissal of Plaintiff's federal claims, the court declines to exercise jurisdiction over Plaintiff's pendent state law claims. To the extent that Plaintiff has viable claims against the union under New York Human Rights Law or other state law, he may bring them in state court. N.Y. C.P.L.R. § 205 permits Plaintiff to refile the pendent claims in state court within six months of the date of termination of this action without regard to the original statute of limitations for those claims, so long as the claims would have been timely at the commencement of this action. Tishman v. Associated Press, No. 05-CV-4278 (GEL), 2007 WL 4145556, *9 (S.D.N.Y. Nov. 19, 2007).

an employee—presumably a supervisor or manager—which references Plaintiff's five-gallon spill, and states that "[Plaintiff] was not fully instructed on the use of this unit to open the middle compt first" (id. at 150).

Plaintiff is correct that this fact is missing from the R&R's background section. However, this fact relates to Plaintiff's claims against the employer, which are stayed due to the employer's filing for bankruptcy. The fact is not material to Plaintiff's claims against the union, which concern the union's alleged discrimination against and inadequate representation of Plaintiff at the grievance meeting. The exclusion of the fact of Plaintiff's insufficient training has no bearing on the R&R's analysis of Plaintiff's claims against the union. Therefore the objection is overruled.

4.     Incomplete Statement of Plaintiff's Complaint and Deposition Testimony

Plaintiff also objects to the R&R on the grounds that it included only partial quotes from Plaintiff's Complaint and deposition transcript on various issues. (Pl.'s Obj. at 8.) The R&R stated "Roger Romance, the employer's safety manager approached plaintiff and told him that no one had ever pointed out the error and that he was 'hurting the company." (R&R at 2 (quoting Compl. at 28; Def.'s 56.1 Stmt. ¶ 55).) Plaintiff objects to the R&R's reference to "the error" as shorthand for the error in the company manual about truck unloading procedure, arguing that "the Magistrate's undetailed erroneously implicative statement of 'error' leads to erroneous presumptions."[8] (Pl.'s Obj. at 8.) Plaintiff lodges a similar objection regarding partial quoting of his deposition testimony in the R&R, which he claims did not make clear that his belief that the employer was concerned that Plaintiff had jeopardized a $43 million government grant was only speculation. (Id. at 8-9.)

---

[8]     In his Complaint, Plaintiff's full statement on this point was "Roger Romance said to me, 'You are the only one that ever pointed out details in the written company policy you know. That can hurt the company.'" (Compl. at 28.)

The court has reviewed Plaintiff's Complaint and attachments, as well as the relevant portions of Plaintiff's deposition. The court is therefore aware of Plaintiff's statements in full and finds that the R&R's excerpts thereof do not misrepresent Plaintiff's words. This objection is meritless and is overruled.

### 5. Reference to Plaintiff's Arrest Record

Plaintiff objects to the R&R's reference to his "criminal record," and "asserts and maintains that he (Plaintiff) is NOT a criminal." (Pl.'s Obj. at 9.) This objection is frivolous. The R&R's sole reference to Plaintiff's arrest record is a sentence listing Plaintiff's state law claims, which include "discrimination against him on the basis of his criminal record." (R&R at 23.) Because the R&R recommends declining jurisdiction over Plaintiff's state law claims, it does not analyze this cause of action and makes no findings about Plaintiff's criminal history or lack thereof. Plaintiff is in no way prejudiced by the R&R's word choice as it had no bearing on the analysis. This objection is overruled.

### B. General Objections

Plaintiff also raises the following objection to the R&R:

> The Magistrate's [sic] Judge's Report and Recommendation, (R&R) dated February 18, 2014, in part, lacks proper details of the prima facie facts of this case and is, in part, based on errors and misrepresentation of PRIMA FACIE facts, and consequently errors in application of law. Moreover, factual evaluations accompanied by prima facie documented testimony, and prima facie direct document evidence, are determinations for a District court by a jury of Plaintiff's peers to determine the credibility thereof.

(Pl.'s Obj. at 8.) Because this objection is general, the court reviews the R&R for clear error. Pall Corp., 249 F.R.D. at 51. Summary judgment is proper if "there is no genuine dispute as to any material fact." Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law."

17

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not all facts that Plaintiff put forward in his filings are material to the legal findings in the R&R, in part because many facts relate only to the employer's liability. It was not improper for the R&R to ignore non-material facts or disputes thereof because they do not "affect the outcome" of the case against the union. Anderson, 477 U.S. at 248. The court has reviewed the R&R and the "prima facie facts" in Plaintiff's Complaint and objections and finds no clear error in the R&R's consideration of the facts in the record.

### C. Remainder of the Report & Recommendations

Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2. The court therefore reviews for clear error the portions of Judge Bloom's R&R that were not objected to and finds none. Accordingly, the court also adopts those portions of the R&R.

## IV. PLAINTIFF'S OTHER MOTIONS

### A. Motion For a Settlement Conference

Plaintiff submitted two additional motions with his objections. One "request[s] a hearing to discuss a court mediated settlement proposal" and "request[s] that Christina Gallo be excluded as counsel/co-counsel to Defendant." (Mot. for Hr'g & to Disqualify Counsel at 1.) Plaintiff's motion relays recent settlement discussions he had with Ms. Gallo, counsel for the union. Although the parties came to an agreement generally, Plaintiff objected to the language of the draft settlement, and did not execute the agreement. He claims that the union's counsel "continues to attempt to deceive [him] by trickery, by attempting to have the plaintiff enter into a stipulation that could potentially perjure the plaintiff and/or cause the case to be 'Terminated' on a technicality." (Id. at 2.) Plaintiff requests that the court mediate a settlement. (Id.) The union

submitted a letter in response, stating that it explained the settlement agreement to Plaintiff, removed certain language to which Plaintiff objected, and sent a draft to Plaintiff that had been signed by the union. (Def.'s Mar. 28, 2014, Ltr. (Dkt. 71).) The union has reservations about the likelihood of success of future negotiations with Plaintiff. (Id. at 2.)

The court declines to order a settlement conference at this late juncture in the case. During conferences before Judge Bloom, she encouraged the parties to discuss settlement. (June 12, 2012, Order (Dkt. 19); Sept. 7, 2012, Order (Dkt. 31).) Plaintiff was able to request settlement conferences during the two-year pendency of this case but waited until the brink of potential judgment against him to do so. Therefore Plaintiff's eleventh-hour motion for a settlement conference is DENIED.

### B.    Motion to Disqualify Counsel

Plaintiff also moved to disqualify Ms. Gallo based on her actions during settlement negotiations and her cohabitation with one of Judge Bloom's former law clerks. (Mot. for Hr'g & to Disqualify Counsel at 2.)

"Disqualification is viewed with disfavor in this Circuit because it impinges on a 'client's right freely to choose his counsel.'" Finkel v. Frattarelli Bros., Inc., 740 F. Supp. 2d 368, 372 (E.D.N.Y. 2010) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)) (other citations and internal quotations marks omitted). Courts require that the party seeking disqualification meet a "high standard of proof." Id. (citing Evans, 715 F.2d at 791-92). The decision to disqualify an attorney is left to the discretion of the district court, which looks to the American Bar Association ("ABA") and state disciplinary rules for guidance. Id. (citing Hempstead Video, Inc. v. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005); Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)).

Plaintiff's conclusory statements that Ms. Gallo attempted "deceive" and "trick[]" him during settlement discussions and that her continuing representation would "prejudice the parties" are unsupported by evidence. (Mot. for Hr'g & to Disqualify Counsel at 2.)

Plaintiff does not allege any violation of the ABA Model Rules of Professional Conduct, New York's Rules of Professional Conduct, or other ethics rules, and the court's review of correspondence from Ms. Gallo to Plaintiff and the attached draft settlement reveals none. Furthermore, the union's counsel previously disclosed to the court Ms. Gallo's relationship with Judge Bloom's then law clerk. (Def.'s May 22, 2012, Ltr. (Dkt. 15).) As Judge Bloom noted in her subsequent Order, this was not grounds to disqualify Ms. Gallo, but as a precaution, the law clerk at issue was not permitted to work on this case. (May 24, 2012, Order (Dkt. 16).) Moreover, the law clerk is no longer working for Judge Bloom. Therefore Plaintiff's motion to disqualify Ms. Gallo is DENIED.

### C.     Motion to Appoint Counsel

Finally, Plaintiff renews his request for pro bono counsel. Plaintiff's prior requests for counsel were denied without prejudice by Judge Bloom. (See June 29, 2012, Order (Dkt. 22); Jan. 28, 2013, Order (Dkt. 45).) There is no right to counsel in a civil case. Martin-Trigona v. Lavien, 737 F.2d 1254, 1260 (2d Cir. 1984). In considering whether to request that a volunteer attorney take the case, a court must first consider whether the case meets "a threshold showing of some likelihood of merit." Johnston v. Genessee Cnty. Sheriff Maha, 606 F.3d 39, 41 (2d Cir. 2010). As this Order makes clear, Plaintiff's case does not meet this requirement. Therefore Plaintiff's motion is DENIED with prejudice.

## V.   CONCLUSION

For the reasons set forth above, Judge Bloom's R&R is ADOPTED IN FULL.

Defendant's motion for summary judgment is GRANTED on Plaintiff's federal claims.

Plaintiff's state law claims are DISMISSED without prejudice.  And Plaintiff's cross-motion for

summary judgment is DENIED.

Plaintiff's motions for a settlement conference, disqualification of Christina Gallo, and

appointment of pro bono counsel are also DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 31 , 2014

NICHOLAS G. GARAUFIS
United States District Judge